UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 20-cr-173 (WMW) |
| Plaintiff, | |
| v. | **POSITION REGARDING TO SENTENCING** |
| Matthew Scott White, | |
| Defendant. | |

---

On August 18, 2020 a one-count Information was filed against Matthew White charging him with arson in violation of 18 U.S.C. § 844(i) on occurring May 28, 2020. Mr. White pleaded guilty on September 25, 2020 and was taken into custody pending sentencing. Besides pleading early in the case to an information, Mr. White admitted his involvement in the arson at the time of his arrest. He also cooperated fully with the preparation of the pre-sentence report.

With a three-level acceptance of responsibility reduction, Mr. White's base offense-level is 21, and with a criminal history category of VI, Mr. White's guideline range is 77-96 months of imprisonment. Harleysville Insurance Company covered the loss to Enterprise Rent-A-Car in the amount of $664,358.14. There is a mandatory minimum sentence of five years in this case.

The offense conduct in this case is as follows: swept up in last year's protests over the George Floyd death, Mr. White found himself outside of an Enterprise Rental office in the Midway area of Saint Paul. Without much thought and jacked-up on adrenaline

1

from being hit with a rubber bullet fired by a police officer, Mr. White entered the building and put his lighter to papers in the building's office. After watching the fire burn for a short period, Matthew left and roamed the area looking for other buildings to enter. He entered another nearby business and stole some beer, then returned to his car and left the area. He was arrested in short order and questioned by police. Matthew confessed to setting the fire to law enforcement without asking for a lawyer. This was not an offense that required much cunning or forethought.

**IMPOSING A SENTENCE IN THE POST-*BOOKER* ERA UNDER § 3553(a):**

The criteria the Court should employ have surely been set forth in countless sentencing memoranda, but the standard bears repeating. In the post-*Booker* era of federal sentencing, the "Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 129 S.Ct. 890 (2009). Even pre-*Booker*, it was "uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). However, in light of several recent Supreme Court cases, it is truly incumbent on the sentencing court to "make an individualized assessment based on the facts presented" in each case. *Gall v. United States*, 128 S.Ct. 586, 602 (2007). District Courts "may not presume that the Guidelines range is reasonable." *Id*. at 597.

The Supreme Court in *Booker* held that the United States Sentencing Guidelines are advisory and that District Courts must examine all the § 3553(a) factors in order to

impose a sentence "sufficient, but not greater than necessary" to accomplish the goals of sentencing. *United States v. Booker*, 543 U.S. 220 (2005). The trio of 2007 Supreme Court cases made abundantly clear that District Courts must fashion individualized sentences based on the unique facts and circumstances of each case, and that the Guidelines emphatically do not enjoy a presumption of reasonableness. *Gall v. United States*, 128 S.Ct. 586, 602 (2007)(probationary sentence substantially outside of Guidelines was reasonable and justified); *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007)(sentencing courts may depart from Guidelines ranges based solely on policy considerations, including disagreements with Guidelines drug sentencing policies); *Rita v. United States*, 127, S.Ct. 2456, 2465 (2007)(sentencing courts may vary based on arguments that Guidelines sentencing range itself fails to comport with § 3553(a) factors). The thrust of *Booker* and its progeny is "that the District Court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough*, 128 S.Ct. at 577 (Scalia, J., concurring).

Because the District Court is in a uniquely "superior position to find facts and judge their import under § 3553(a)," the Appellate Courts must now review all sentences under an abuse-of-discretion standard, regardless of whether the sentence is inside or outside the Guidelines range. *Gall*, 128 S.Ct. at 597, 602. The Supreme Court has explicitly rejected the notion that extraordinary circumstances are required to justify a sentence outside the Guidelines range. *Id*. at 595. "We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for

determining the strength of the justifications required for a specific sentence." *Id.* So long as sentences that differ from the Guidelines are justified, a sentencing court's decision stands unassailable on appeal. *See, e.g., United States v. Jiminez-Gutierrez*, 491 F.3d 923 (8th Cir.2007)(affirming substantial downward departure that was justified on record, and noting that even where circuit courts disagree with the degree of a trial judge's departure, the discretion to make such decisions is within the sole province of the District Court); *United States v. Gonzalez-Alvorado*, 477 F.3d 648, 650 (8th Cir.2007)(noting that a sentence that varies from the Guidelines range is reasonable so long as the judge offers appropriate justifications under § 3553(a) factors).

After using the Guidelines to determine the initial benchmark and allowing the parties to argue their respective positions, the Court should then make an individualized assessment of the unique facts of the case based on the § 3553(a) factors. *Gall*, 128 S.Ct. at 596-97. "After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 597. Ultimately, this Court is charged with a duty to protect the public, as well as the civil rights of the Defendant, with its experience, its wisdom, and the discretion vested in it by the Constitution and Congress.

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553.

## **MR. WHITE'S BACKGROUND**

Mr. White's personal history is thoroughly set forth in his Pre-sentence Report, but it is noteworthy to highlight two details: first, until he was detained post-guilty plea, Mr.

4

White has complied with all of the multitude of release conditions set by the Court, as well attending treatment and submitting to drug and alcohol tests. Second, as the Pre-sentence Report reflects, until he was laid off due to the COVID pandemic, Mr. White has demonstrated an ability to hold down a job as a carpenter. (In the undersigned's opinion, the ability to keep a job is the best indicator of future success once a defendant leaves prison. An individual who knows how to get out of bed and get to work on time already understands what is required to make it as a legitimate person going forward.)

The Court is urged to read closely the letters and other materials submitted on behalf of Mr. White. The only conclusion the reader can draw from this parade of horribles is that Matthew never had a chance in life: no consistency; no structure; no nurturing; no one to help him develop impulse control; parents who are deeply addicted to drugs and alcohol, even during pregnancy - Matthew was essentially a throw-away child.

In her letter, Matthew's mother uses the phrase "intergenerational transmission of violence and crime," to describe her children's upbringing - but that phrase that doesn't begin to express the utter chaos in Matthew's world. As for Matthew's father, a normal dad takes his kids camping or to Twins' baseball games. Matthew and his dad shot heroin together - the reader can only picture that obscene scenario and shudder. It is more than rhetorical question to ask how anyone can honestly hold Matthew morally responsible in this case when he was handed a steady diet of instability, violence, and parental drug use from day-one? That he would be standing before this Court on a very serious (yet avoidable and foolish) federal criminal charge was written in the stars decades ago.

## THE NEED FOR THE SENTENCE IMPOSED — § 3553(a)(2)(A)-(D)

Statutory sentencing objectives require that a sentence reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant and provide the defendant with needed education or vocational training, medical care and other correctional treatment in the most effective manner. 18 U.S.C. 3553(a)(2)(A)–(D). In this case, a sentence of not more than 77 months is sufficient, but not greater than necessary to serve these goals.

A sentence of 77 months would also promote respect for the law, because, contrary to what many prosecutors argue, 77 months in a federal prison is an eternity. In addition, to protect the public and promote respect for the law, a 77-month sentence would provide just punishment. To be sure, the public deserves to see that crimes are punished – that's what helps enforce the social-contract and reinforces respect for the law. But the punishment must be just. Matthew's life has already been destroyed by a merry-go-round of drugs, alcohol, and imprisonment. And he has had to tell his family and children about his misconduct (again) and been held up to ridicule once again. Warehousing him for anything more than 77 months serves no purpose.

Defense counsel has seen no research that long sentences for crimes deter others from committing similar crimes. To the contrary, prisons and jails in the United States are swollen to capacity with offenders even decades after President Nixon launched his high-profile war on crime. That is because deterrence via lengthy prison sentences is a fallacy - people immersed in drugs and crime are not the type to read the crime section of the local

paper, take note of Bureau of Prison statistics, or think that they will get caught like those other mopes arrested in the streets. One person that will be deterred is Matthew White. The point has surely been driven home that committing crimes such as arson is a serious and utterly unacceptable crime. And now in his early-30s, he hardly seems to be the type of person from whom the public will need protection from once he leaves federal prison.

Finally, Matthew, more than anything else, needs continued treatment, counseling, and additional educational and/or vocation training to provide him a path to being a productive and law-abiding member of the community earning more than a minimum wage. Surely a 77-month prison sentence is enough time to hold Matthew accountable and equip him with the cognitive and work-skills to return to a legitimate life and provide for his family.

## **CONCLUSION:**

Based on the foregoing Matthew White respectfully asks that the Court to sentence him to 77 months in prison. This term of imprisonment and the additional terms and conditions of supervised release are sufficient, but not greater than necessary, to serve the goals of the sentencing guidelines and the interests of society.

Dated: June 2, 2021                                              Respectfully submitted,

/s Paul Applebaum

1ST National Bank Building
Suite W1610
332 Minnesota Street
Saint Paul, Minnesota 55101
651.222.2999
*Attorney for Matthew White*

7